Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles H. Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff John P. Ward*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN P. WARD, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| UPSTART HOLDINGS, INC., DAVE GIROUARD, and SANJAY DATTA, | |
| Defendant. | |

Plaintiff John P. Ward ("Plaintiff") individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Upstart, Inc. ("Upstart" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Upstart; and (c) review of other publicly available information concerning Upstart.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Upstart securities between November 9, 2021 and May 9, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Upstart is a cloud-based artificial intelligence ("AI") lending platform. The Company claims that "AI lending enables a superior loan product with improved economics that can be shared between consumers and lenders." Moreover, Upstart "leverage[s] the power of AI to more accurately quantify the true risk of a loan." The Company recognizes revenue primarily from fees paid by banks.

3.      On May 9, 2022, after the market closed, Upstart announced its first quarter 2022 financial results in a press release. Therein, the Company reduced its fiscal 2022 guidance, expecting revenue of approximately $1.25 billion and contribution margin of 48%. During the related conference call, Upstart's Chief Financial Officer cited "rising interest rates and rising consumer delinquencies [as] putting downward pressure on conversion."

4.      On this news, the Company's stock price fell $43.52, or 56%, to close at $33.61 per share on May 10, 2022.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that Upstart's AI model could not adequately account for macroeconomic factors such as interest rates that impact the market-clearing price for loans; (2) that, as a result, Upstart was experiencing negative impact on its conversion rate; (3) that, as a result, the Company was reasonably likely to use its balance sheet to fund loans; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.    Plaintiff John P. Ward, as set forth in the accompanying certification, incorporated by reference herein, purchased Upstart securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Upstart is incorporated under the laws of Delaware with its principal executive offices located in San Mateo, California. Upstart's common stock trades on the NASDAQ exchange under the symbol "UPST."

13.    Defendant Dave Girouard ("Girouard") was the Chief Executive Officer ("CEO") of the Company at all relevant times.

14.    Defendant Sanjay Datta ("Datta") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.    Defendants Girouard and Datta (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.    Upstart is a cloud-based artificial intelligence ("AI") lending platform. The Company claims that "AI lending enables a superior loan product with improved economics that can be shared between consumers and lenders." Moreover, Upstart "leverage[s] the power of AI to

more accurately quantify the true risk of a loan." The Company recognizes revenue primarily from fees paid by banks.

### Materially False and Misleading

### Statements Issued During the Class Period

17.     The Class Period begins on November 9, 2021.[1] On that day, Upstart announced its third quarter 2021 financial results in a press release that stated, in relevant part:

### Third Quarter 2021 Financial Highlights

- **Revenue.** Total revenue was $228 million, an increase of 250% from the third quarter of 2020. Total fee revenue was $210 million, an increase of 235% year-over-year.

- **Transaction Volume and Conversion Rate.** Bank Partners originated 362,780 loans, totaling $3.13 billion, across our platform in the third quarter, up 244% from the same quarter of the prior year. Conversion on rate requests was 23% in the third quarter of 2021, up from 15% in the same quarter of the prior year. Beginning in the third quarter of 2021, in order to better reflect actual conversions, we removed rate inquiries identified by our platform as likely fraudulent from our Conversion Rate calculation. Please see the section titled "Key Operating Metrics" below for further detail on the calculation and related information about prior periods.

- **Income from Operations.** Income from operations was $28.6 million, up from $12.2 million the prior year.

- **Net Income and EPS.** GAAP net income was $29.1 million, up from $9.7 million in the third quarter of 2020. Adjusted net income was $57.4 million, up from $12.3 million in the same quarter of the prior year. Accordingly, GAAP diluted earnings per share was $0.30, and diluted adjusted earnings per share was $0.60 based on the weighted-average common shares outstanding during the period.

- **Contribution Profit.** Contribution profit was $95.9 million, up 184% from in the third quarter of 2020, with a contribution margin of 46% compared to a 54% contribution margin in the same quarter of the prior year.

- **Adjusted EBITDA.** Adjusted EBITDA was $59.1 million, up from $15.5 million in the same quarter of the prior year. The third quarter 2021 adjusted EBITDA margin was 26% of total revenue, up from 24% in the third quarter of 2020.

### Financial Outlook

For the fourth quarter of 2021, Upstart expects:

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

- **Revenue** of $255 to $265 million

- **Contribution Margin** of approximately 47%

- **Net Income** of $16 to $20 million

- **Adjusted Net Income** of $48 to $50 million

- **Adjusted EBITDA** of $51 to $53 million

- **Basic Weighted-Average Share Count** of approximately 81.9 million shares

- **Diluted Weighted-Average Share Count** of approximately 96.7 million shares

18.    On November 12, 2021, Upstart filed its quarterly report on Form 10-Q for the period ended September 30, 2021, affirming the previously reported financial results. Therein, the Company stated that "Upstart-powered loans are originated in reliance on the fact that our bank partners are the 'true lenders' for such loans." As to the AI-model powering the Company's platform, Upstart stated:

> ***If we are unable to continue to improve our AI models or if our AI models contain errors or are otherwise ineffective, our growth prospects, business, financial condition and results of operations would be adversely affected.***
>
> Our ability to attract potential borrowers to our platform and increase the number of Upstart-powered loans will depend in large part on our ability to effectively evaluate a borrower's creditworthiness and likelihood of default and, based on that evaluation, offer competitively priced loans and higher approval rates. Further, our overall operating efficiency and margins will depend in large part on our ability to maintain a high degree of automation in our loan application process and achieve incremental improvements in the degree of automation. If our AI models fail to adequately predict the creditworthiness of borrowers due to the design of our models or programming or other errors, and our AI models do not detect and account for such errors, or any of the other components of our credit decision process fails, we may experience higher than forecasted loan losses. Any of the foregoing could result in sub-optimally priced loans, incorrect approvals or denials of loans, or higher than expected loan losses, which in turn could adversely affect our ability to attract new borrowers and bank partners to our platform, increase the number of Upstart-powered loans or maintain or increase the average size of loans facilitated on our platform.
>
> Our AI models also target and optimize other aspects of the lending process, such as borrower acquisition, fraud detection, default timing, loan stacking, prepayment timing and fee optimization, and our continued improvements to such models have allowed us to facilitate loans inexpensively and virtually instantly, with a high degree of consumer satisfaction and with an insignificant impact on loan performance. However, such applications of our AI models may prove to be less predictive than we expect, or than they have been in the past, for a variety of reasons, including inaccurate assumptions or other errors made in constructing such

models, incorrect interpretations of the results of such models and failure to timely update model assumptions and parameters. ***Additionally, such models may not be able to effectively account for matters that are inherently difficult to predict and beyond our control, such as macroeconomic conditions, credit market volatility and interest rate fluctuations, which often involve complex interactions between a number of dependent and independent variables and factors. Material errors or inaccuracies in such AI models could lead us to make inaccurate or sub-optimal operational or strategic decisions, which could adversely affect our business, financial condition and results of operations.***

Additionally, errors or inaccuracies in our AI models could result in any person exposed to the credit risk of Upstart-powered loans, whether it be us, our bank partners or investors in our loan funding programs, experiencing higher than expected losses or lower than desired returns, which could impair our ability to retain existing or attract new bank partners and investors to participate in our loan funding programs, reduce the number, or limit the types, of loans bank partners and investors are willing to fund, and limit our ability to increase commitments under our warehouse and other debt facilities. Any of these circumstances could reduce the number of Upstart-powered loans and harm our ability to maintain a diverse and robust loan funding program and could adversely affect our business, financial condition and results of operations.

(First emphasis in original.)

19.     On February 15, 2022, after the market closed, Upstart announced its fourth quarter and full year 2021 financial results in a press release that stated, in relevant part:

**Full Year 2021 Financial Highlights**

- **Revenue.** Total revenue was $849 million, an increase of 264% from 2020. Total fee revenue was $801 million, an increase of 251% year-over-year.

- **Transaction Volume and Conversion Rate.** Bank partners originated 1.3 million loans, totaling $11.8 billion, across our platform in 2021, up 338% from the prior year. Conversion on rate requests was 24% 2021, up from 15% in the prior year.

- **Income from Operations.** Income from operations was $141 million, up from $11.8 million the prior year.

- **Net Income and EPS.** GAAP net income was $135 million, up from $6.0 million in 2020. Adjusted net income was $224 million, up from $17.5 million in the prior year. Accordingly, GAAP diluted earnings per share was $1.43, and diluted adjusted earnings per share was $2.37 based on the weighted-average common shares outstanding during the period.

- **Contribution Profit.** Contribution profit was $398 million, up 279% from 2020, with a contribution margin of 50% compared to a 46% contribution margin in the prior year.

- **Adjusted EBITDA.** Adjusted EBITDA was $232 million, up from $31.5 million in the prior year. Full year 2021 adjusted EBITDA margin was 27% of total revenue, up from 13% in 2020.

**Financial Outlook**

For the first quarter of 2022, Upstart expects:

- **Revenue** of $295 to $305 million

- **Contribution Margin** of approximately 46%

- **Net Income** of $18 to $22 million

- **Adjusted Net Income** of $50 to $52 million

- **Adjusted EBITDA** of $56 to $58 million

- **Basic Weighted-Average Share Count** of approximately 84.3 million shares

- **Diluted Weighted-Average Share Count** of approximately 95.9 million shares

For the full year 2022, Upstart expects:

- **Revenue** of approximately $1.4 billion

- **Contribution Margin** of approximately 45%

- **Adjusted EBITDA** of approximately 17%

20.     On February 18, 2022, Upstart filed its annual report on Form 10-K for the period ended December 31, 2021 (the "2021 10-K"), affirming the previously reported financial results. Therein, the Company stated that "[l]oans issued through [its] platform can be retained by [Upstart's] originating bank partners, distributed to our broad base of institutional investors and buyers that invest in Upstart-powered loans or funded by Upstart's balance sheet." It further stated that for fiscal 2021, "16% of the loans funded through our platform were retained by the originating bank and 80% of loans were purchased by institutional investors through our loan funding programs." The 2021 10-K also touted the Company's AI-lending platform as "central to [Upstart's] value proposition and unique position in the industry" because it "incorporate[s] more than 1,500 variables [and] ha[s] been trained by more than 21.6 million repayment events." It also contained "Risk Factors" substantially similar to that identified in ¶ 18.

21.     The above statements identified in ¶¶ 17-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that

Upstart's AI model could not adequately account for macroeconomic factors such as interest rates that impact the market-clearing price for loans; (2) that, as a result, Upstart was experiencing negative impact on its conversion rate; (3) that, as a result, the Company was reasonably likely to use its balance sheet to fund loans; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

22.     On May 9, 2022, after the market closed, Upstart announced its first quarter 2022 financial results in a press release. Therein, the Company reduced its fiscal 2022 guidance, expecting revenue of approximately $1.25 billion and contribution margin of 48%.

23.     The same day, the Company held a conference call during which Defendant Datta stated that the "balance of loans, notes, and residuals at the end of the quarter was . . . up to $604 million from $261 million in Q4." He cited factors in the macro environment, including "rising interest rates and rising consumer delinquencies [as] putting downward pressure on conversion." He further stated that Upstart has "started to selectively use [its] capital as a funding buffer for core personal loans in periods of interest rate fluctuation where the market clearing price is in flux."

24.     Though Defendant Datta acknowledged that "historically, [Upstart's] balance sheet has been almost exclusively for the purpose of R&D," in the last quarter the Company used it "to do . . . sort of a market-clearing mechanism." He stated:

> And by that, what I mean is when interest rates in the economy change quite quickly, I think it would be fair to say that our platform, *its ability to react to the new market-clearing price, it's probably not as nimble as we would like.*
>
> *It's somewhat manual. It requires a bunch of conversations and phone calls.* And so when interest rates smooth and investors are -- so each deciding what their new return hurdles are, there can be a gap or a delay in responding to funding. And that's a situation where we've chosen to sort of step in with our balance sheet and almost sort of bridge to the new market-clearing price.
>
> And if that is happening often and abruptly, we've been sort of playing that role with our balance sheet. I don't view that to be a long-term or necessarily sizable activity for us. I think that developing the mechanisms to respond more nimbly to new price discovery as rates change is something that's on our road map, and something that we want to start to invest in so that it can happen in a much more

automated way. At the end of the day, we view our platform as being a platform that responds to risk and rates in the environment.

25.     On this news, the Company's stock price fell $43.52, or 56%, to close at $33.61 per share on May 10, 2022.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Upstart securities between November 9, 2021 and May 9, 2022, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Upstart's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Upstart shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Upstart or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Upstart; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

32.     The market for Upstart's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Upstart's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Upstart's securities relying upon the integrity of the market price of the Company's securities and market information relating to Upstart, and have been damaged thereby.

33.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Upstart's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or

misleading because they failed to disclose material adverse information and/or misrepresented the truth about Upstart's business, operations, and prospects as alleged herein.

34.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Upstart's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

35.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

36.    During the Class Period, Plaintiff and the Class purchased Upstart's securities at artificially inflated prices and were damaged thereby.   The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

37.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by

virtue of their receipt of information reflecting the true facts regarding Upstart, their control over, and/or receipt and/or modification of Upstart's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Upstart, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## <u>(FRAUD-ON-THE-MARKET DOCTRINE)</u>

38.     The market for Upstart's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Upstart's securities traded at artificially inflated prices during the Class Period.  On November 9, 2021, the Company's share price closed at a Class Period high of $313.71 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Upstart's securities and market information relating to Upstart, and have been damaged thereby.

39.     During the Class Period, the artificial inflation of Upstart's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Upstart's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Upstart and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

40.     At all relevant times, the market for Upstart's securities was an efficient market for the following reasons, among others:

(a)     Upstart shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

1    (b)    As a regulated issuer, Upstart filed periodic public reports with the SEC

2    and/or the NASDAQ;

3    (c)    Upstart regularly communicated with public investors via established

4    market communication mechanisms, including through regular dissemination of press releases on

5    the national circuits of major newswire services and through other wide-ranging public

6    disclosures, such as communications with the financial press and other similar reporting services;

7    and/or

8    (d)    Upstart was followed by securities analysts employed by brokerage firms

9    who wrote reports about the Company, and these reports were distributed to the sales force and

10   certain customers of their respective brokerage firms.  Each of these reports was publicly available

11   and entered the public marketplace.

12   41.    As a result of the foregoing, the market for Upstart's securities promptly digested

13   current information regarding Upstart from all publicly available sources and reflected such

14   information in Upstart's share price. Under these circumstances, all purchasers of Upstart's

15   securities during the Class Period suffered similar injury through their purchase of Upstart's

16   securities at artificially inflated prices and a presumption of reliance applies.

17   42.    A Class-wide presumption of reliance is also appropriate in this action under the

18   Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

19   because the Class's claims are, in large part, grounded on Defendants' material misstatements

20   and/or omissions.  Because this action involves Defendants' failure to disclose material adverse

21   information regarding the Company's business operations and financial prospects—information

22   that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to

23   recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable

24   investor might have considered them important in making investment decisions.   Given the

25   importance of the Class Period material misstatements and omissions set forth above, that

26   requirement is satisfied here.

27

28

## NO SAFE HARBOR

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Upstart who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

44.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Upstart's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

46.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Upstart's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Upstart's financial well-being and prospects, as specified herein.

48.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Upstart's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Upstart and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the

Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Upstart's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Upstart's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Upstart's securities during the Class Period at artificially high prices and were damaged thereby.

52.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Upstart was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Upstart securities, or,

1   if they had acquired such securities during the Class Period, they would not have done so at the

2   artificially inflated prices which they paid.

3       53.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act

4   and Rule 10b-5 promulgated thereunder.

5       54.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

6   other members of the Class suffered damages in connection with their respective purchases and

7   sales of the Company's securities during the Class Period.

8                                   **SECOND CLAIM**

9                       **Violation of Section 20(a) of The Exchange Act**

10                      **<u>Against the Individual Defendants</u>**

11      55.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully

12  set forth herein.

13      56.     Individual Defendants acted as controlling persons of Upstart within the meaning

14  of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and

15  their ownership and contractual rights, participation in, and/or awareness of the Company's

16  operations and intimate knowledge of the false financial statements filed by the Company with the

17  SEC and disseminated to the investing public, Individual Defendants had the power to influence

18  and control and did influence and control, directly or indirectly, the decision-making of the

19  Company, including the content and dissemination of the various statements which Plaintiff

20  contends are false and misleading. Individual Defendants were provided with or had unlimited

21  access to copies of the Company's reports, press releases, public filings, and other statements

22  alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and

23  had the ability to prevent the issuance of the statements or cause the statements to be corrected.

24      57.     In particular, Individual Defendants had direct and supervisory involvement in the

25  day-to-day operations of the Company and, therefore, had the power to control or influence the

26  particular transactions giving rise to the securities violations as alleged herein, and exercised the

27  same.

28

58.     As set forth above, Upstart and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  May 13, 2022                        GLANCY PRONGAY & MURRAY LLP

By:     */s/ Charles H. Linehan*
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  info@glancylaw.com

*Attorneys for Plaintiff John P. Ward*

**SWORN CERTIFICATION OF PLAINTIFF**
**UPSTART HOLDINGS, INC. (UPST) SECURITIES LITIGATION**

I, John P. Ward, certify that:

1.      I have reviewed the Complaint, adopt its allegations, and authorize its filing
        and/or the filing of a lead plaintiff motion on my behalf.

2.      I did not purchase the Upstart Holdings, Inc. securities that are the subject of this
        action at the direction of plaintiff's counsel or in order to participate in any private
        action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify
        at deposition and trial, if necessary.

4.      My transactions in Upstart Holdings, Inc. securities during the period set forth in
        the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a
        class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to
        receive my pro rata share of any recovery or as ordered or approved by the court,
        including the award to a representative plaintiff of reasonable costs and expenses
        (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

5/13/2022                                    _John P. Ward_
_____                      _____
        Date                                    John P. Ward

**John P. Ward's Transactions in Upstart Holdings, Inc. (UPST)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 5/2/2022 | Bought | 1,000 | $79.0950 |
| 5/2/2022 | Bought | 300 | $81.0400 |
| 5/2/2022 | Bought | 100 | $81.0500 |